The PEOPLE of the State of Colorado, Complainant,

v.

Samuel Osborn KUNTZ, Jr., Attorney–Respondent.

No. 95SA366.

Supreme Court of Colorado, En Banc.

Jan. 8, 1996.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Assistant Disciplinary Counsel, Denver, for Complainant.

Samuel Osborn Kuntz, Jr., Colorado Springs, Pro Se.

PER CURIAM.

The respondent in this lawyer discipline proceeding, Samuel Osborn Kuntz, Jr., has admitted in a stipulation, agreement, and conditional admission of misconduct, C.R.C.P. 241.18, that he seriously neglected

three separate client matters. The respondent and the assistant disciplinary counsel have recommended that the respondent be suspended from the practice of law for six months and undergo reinstatement proceedings. An inquiry panel of the supreme court grievance committee approved the conditional admission, including the recommended discipline. We accept the conditional admission and the recommendation.

## I

The respondent was admitted to practice law in Colorado in 1976. In the conditional admission, which encompasses three formal complaints, the parties stipulated to the following facts and disciplinary violations.

## A

In March 1993, Craig S. Hinshaw, a member of the United States Air Force, paid the respondent a $300 retainer to immediately initiate a civil action to enforce the terms of a promissory note and to foreclose a deed of trust. Between March and October 1993, Hinshaw tried to contact the respondent many times. On the few occasions when Hinshaw was successful, the respondent promised to take action with respect to the case. However, the respondent did not do so. In October 1993, Hinshaw discharged the respondent and asked for a refund of the $300 retainer. The respondent did not reply.

Hinshaw filed a request for investigation with the Office of Disciplinary Counsel in January 1994. In March 1994, the respondent refunded the retainer.

The respondent has admitted that the foregoing conduct violated R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to that lawyer); R.P.C. 1.4 (a lawyer shall not fail to appropriately communicate with a client); R.P.C. 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, including refunding any advance payment of fee that has not been earned); and R.P.C. 8.4(c) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## B

Lawrence A. Yacobelli hired the respondent on December 9, 1991, to represent him in a civil action pending in county court in which he was the defendant. Trial was set for January 13, 1992, in El Paso County. Yacobelli, who had moved to Florida, sent the respondent a letter containing the summons, complaint, answer and counterclaim, and notice of trial. The respondent received the documents on December 12, 1992, but took no action on Yacobelli's behalf.

The respondent did not appear for trial on January 13, 1992. Consequently, a default judgment was entered against Yacobelli, a lien on a vehicle he owned was foreclosed, and the vehicle was repossessed on March 10, 1992.

When the vehicle was repossessed, Yacobelli telephoned the respondent. The respondent agreed to remedy the situation by paying any fees necessary to have the vehicle released. The respondent contacted the opposing lawyer and obtained an agreement for the release of the vehicle. On March 18, 1992, Yacobelli picked up his vehicle. Two days later the respondent indicated that he would have the judgment set aside or would otherwise settle the case and reimbursed Yacobelli $524 for his costs.

The respondent and the plaintiff's counsel then entered into an agreement to the effect that the plaintiff would not execute on the judgment so long as payments on the balance due thereunder were timely made. Although he did not seek or obtain Yacobelli's approval of the agreement, the respondent told Yacobelli that the respondent would make the payments required by the agreement on Yacobelli's behalf. The respondent made an initial $2,000 payment and ten other payments of $250 each through March 3, 1993, at which time a balance of $592 remained due and owing to the plaintiff. The respondent then ceased making the payments. When the respondent did not answer any of Yacobelli's subsequent inquiries, Yacobelli filed a request for investigation in June 1994. The respondent began making partial payments on the balance in February 1995; as of Sep-

tember 15, 1995, the balance due totalled $250.

The respondent stipulated that the above conduct, which occurred both before and after the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 6–101(A)(3) and R.P.C. 1.3 (neglect of a legal matter), and R.P.C. 1.4(a) (failure to keep a client reasonably informed about the status of a matter and to comply with reasonable requests for information).

### C

Two Nebraska residents, Monica and Patrick Lichtenberger, were limited partners in a Colorado limited partnership that owned a condominium in Dillon, Colorado. The limited partnership entered into a contract to sell the condominium to a third party in April 1994, but the Lichtenbergers objected because they thought they had rights to purchase the condominium themselves. Monica Lichtenberger then hired the respondent, paid him a retainer of $440, and sent him pertinent documents.

The respondent issued demand letters to the two parties involved in managing the limited partnership on April 20, 1994. The lawyer for the limited partnership sent the respondent a letter on April 26, 1994. In the early part of May 1994, both Monica Lichtenberger and the lawyer for the limited partnership called the respondent, but received no response. The condominium was sold on May 19, 1994.

The respondent promised his client on May 28, 1994, that he would promptly try to set the sale aside, and he wrote a letter to the lawyer for the limited partnership on June 3, 1994. However, he sent a letter dated June 23, 1994, to Monica Lichtenberger indicating that he could not proceed with the matter and needed to withdraw. She promptly demanded the return of her file and the $440 retainer, but the respondent made only a partial refund of $53.20 on September 2, 1994.

The respondent's conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to keep a client reasonably informed about the status of a matter and to comply

with reasonable requests for information); and R.P.C. 1.16(d) (upon termination of representation a lawyer shall surrender client papers and refund any advance payment of fee that has not been earned).

### II

The inquiry panel approved the conditional admission, including the recommendation that the respondent be suspended for six months and be required to undergo reinstatement proceedings and pay restitution. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) provides that in the absence of aggravating or mitigating circumstances, suspension is generally appropriate when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *Id.* at 4.42.

The respondent has a history of previous discipline, which is an aggravating factor. ABA *Standards* 9.22(a). He received a letter of admonition in 1989 for failure to communicate with his clients, and another letter of admonition in 1991 for failing to return a retainer. Additional aggravating factors include the existence of a pattern of misconduct, *id.* at 9.22(c); multiple offenses, *id.* at 9.22(d); and substantial experience in the practice of law, *id.* at 9.22(i).

In mitigation, the assistant disciplinary counsel states that the respondent was suffering from personal or emotional problems during the time of the misconduct, *id.* at 9.32(c), and that the respondent has an otherwise good character or reputation, *id.* at 9.32(g). Although a mental disability apparently contributed to the misconduct, the respondent's recovery from the disability has not been demonstrated by a sustained period of rehabilitation and it is not certain that recurrence is unlikely. *See id.* at 9.32(i). Consequently, the parties have argued that in addition to the suspension the respondent should be required to initiate reinstatement proceedings at such time as he is again competent to practice law.

Given the respondent's disciplinary history and pattern of neglecting legal matters, some period of suspension is appropriate. *See People v. Williams*, 824 P.2d 813, 815 (Colo. 1992) (lawyer suspended for six months and required to undergo reinstatement proceedings where he chronically and continually neglected three client matters). In view of all of the circumstances here presented, we accept the conditional admission and recommendation of a six-month suspension conditioned on reinstatement proceedings and restitution.

## III

Accordingly, it is hereby ordered that Samuel Osborn Kuntz, Jr., be suspended from the practice of law for six months, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered that the respondent shall initiate reinstatement pursuant to C.R.C.P. 241.22(b)–(d) and demonstrate prior to reinstatement that there are no medical or psychological bases that would impair his ability to fulfill his responsibilities as a lawyer at such time as he seeks to resume the practice of law. It is further ordered that as a condition of reinstatement the respondent must establish that he has completed restitution pursuant to the parties' agreement in the Yacobelli matter and has paid restitution to Monica Lichtenberger in the amount of $386.80 plus statutory interest from July 7, 1994, until the date of such payment. Finally, it is ordered that the respondent shall pay the costs of this proceeding in the amount of $1,009.07 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600—17th Street, Suite 920–S, Denver, Colorado 80202–5435.